**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **JAMES R. ZAZZALI, as Trustee for the DBSI Private Actions Trust,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 11-744 GMS** |
| **AFA FINANCIAL GROUP, et al.,** | |
| **Defendants.** | |

**REPLY BRIEF IN SUPPORT OF CERTAIN DEFENDANTS' MOTION TO DISMISS
COMPLAINT FOR LACK OF STANDING AND SUBJECT MATTER JURISDICTION
PURSUANT TO RULE 12(B)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE[1]**

Dated:  March 16, 2012

---

[1]  Due to the large number of Defendants joining in this brief, it was not feasible to list all of them and their counsel on the cover page as called for by D. Del. L.R. 7.1.3(a)(1).  The Moving Defendants are:  Geneos Wealth Management, Inc.; Woodbury Financial Services, Inc.; VSR Financial Services, Inc.; Beneficial Investment Services, Inc.; Triad Advisors, Inc.; Investors Capital Corporation; Crown Capital Securities, L.P. (who joined in the motion to dismiss on December 19, 2011 [D.I. 87]); and GWR Investments (who joined in the motion to dismiss on March 6, 2012 [D.I. 119]).  The Moving Defendants direct the Court's attention to the signature blocks at the end of this brief for a list of all counsel.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION .......................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.   The Bankruptcy Court Lacked Constitutional Authority To Create
The PAT Because Its Creation Did Not Implicate Public Rights;
Because The PAT Was Invalidly Formed, It Lacks Standing To
Prosecute This Case ................................................................................................ 2

II.  Because The Bankruptcy Court Lacked Authority To Create
The PAT, The PAT Trustee Lacks Standing Notwithstanding
His Status As Assignee ........................................................................................... 5

III. There Is No "Easy Fix" For The PAT's Constitutional Infirmity ........................... 6

IV. Res Judicata, Collateral Estoppel and/or Equitable Mootness
Do Not Apply ......................................................................................................... 7

     A.  Res Judicata ...................................................................................................... 7

     B.  Collateral Estoppel ........................................................................................... 9

     C.  Equitable Mootness ........................................................................................ 10

CONCLUSION ............................................................................................................. 10

RLF1 5870208v. 4

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Development Specialists, Inc. v. Orrick, Herrington & Sutcliffe, LLP,*
    2011 WL 6780600 (S.D.N.Y. Dec. 23, 2011) ............................................................3

*Duhaney v. U.S.,*
    621 F.3d 340 (3d Cir. 2010)........................................................................................8

*Heller Ehrman LLP v. Arnold & Porter, LLP (In re Heller Ehrman LLP),*
    --- F.Supp.2d ----, 2011 WL 6179149 (N.D. Cal. Dec. 13, 2011) ............................2

*Ifert v. Miller,*
    138 B.R. 159 (E.D. Pa. 1992) ...................................................................................6

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA Inc.,*
    458 F.3d 244 (3d Cir. 2006)...................................................................................9, 10

*McCarthy v. Wells Fargo Bank, N.A. (In re El-Atari),*
    2011 WL 5828013 (E.D. Va. Nov. 18, 2011) ...........................................................3

*McDonald v. Master Fin., Inc. (In re McDonald),*
    205 F.3d 606 (3d Cir. 2000)........................................................................................3

*Ortiz v. Aurora Health Care, Inc. (In re Ortiz),*
    665 F.3d 906 (7th Cir. 2011) ...............................................................................2, 4, 7

*In re PWS Holding Corp.,*
    228 F.3d 224 (3d Cir. 2000).....................................................................................10

*In re Semcrude L.P.,*
    2012 WL 8597 (3d Cir. Jan. 3, 2012) .....................................................................10

*Sitka Enters., Inc. v. Segarra-Miranda,*
    2011 U.S. Dist. LEXIS 90243 (D.P.R. Aug. 10, 2011) ...........................................3

*Stern v. Marshall,*
    131 S.Ct. 2594 (2011) ..................................................................................... passim

*Tabor v. Kelley (In re Davis),*
    2011 WL 5429095 (Bankr. W.D. Tenn. Oct. 5, 2011) .............................................4

*United Artists Theatre Co. v. Walten (In re United Artists Theatre Co.),*
    315 F.3d 217 (3d Cir. 2003).....................................................................................10

RLF1 5870208v. 4

**STATUTES & RULES**

28 U.S.C. § 157.................................................................................................................6, 7, 9

Fed. R. Bankr. P. 9033 ...........................................................................................................7

## INTRODUCTION

The PAT Trustee's[2] Answering Brief does not address the fundamental question facing this Court:

> Whether in light of *Stern v. Marshall*, the Bankruptcy Court had constitutional authority to enter a final order creating the PAT, a trust that solicits, subsidizes and liquidates non-estate claims against third parties for a fee?

The answer is no. The PAT is not a bankruptcy litigation trust; it has no estate property to liquidate. Its *sole purpose* is to seek and obtain assignments of private claims from third parties and assert those claims on the third parties' behalves against other third parties in exchange for a commission. Since this purpose does not involve any "public rights," the PAT's very creation was beyond the Bankruptcy Court's authority. As a result, the assignments to it are void and the PAT lacks standing to assert the claims before this Court.

The PAT Trustee attempts to avoid this conclusion with a series of faulty arguments. First, he argues that *Stern* should be limited to its precise facts—in other words, that *Stern* should not apply beyond state law counterclaims. But this view completely ignores the reasoning employed in *Stern*, which held that a bankruptcy court may finally adjudicate only *public rights*. Under the PAT Trustee's reading, a bankruptcy court could adjudicate private rights as long as the rights were not asserted in the form of a counterclaim—a result that plainly is at odds with *Stern*'s reasoning. *Stern* applies regardless of the fact that no counterclaims are involved.

Second, the PAT Trustee argues that *Stern* does not apply here because he obtained assignments of claims from third parties, and these assignments grant him standing. But this argument ignores the fact that it was the *creation* of the PAT that was an unconstitutional exercise of the Bankruptcy Court's authority. As a result, the PAT's continued existence is

---

[2] Capitalized terms not defined herein shall have the same meaning as set forth in the Defendants' Opening Brief [D.I. 85-1] ("OB"). The term "AB" refers to the PAT Trustee's Answering Brief [D.I. 112].

inappropriate, and whether it subsequently obtained assignments is irrelevant.

Third, the PAT Trustee argues that this Court should treat the Confirmation Order as a "report and recommendation." But he does not explain how the Court feasibly could do so, as the Confirmation Order is not before the Court. Adopting the Confirmation Order here also would violate the Federal Rules of Bankruptcy Procedure. Moreover, the only appellate court to address the issue so far, the Seventh Circuit, has recognized that bankruptcy courts lack authority to make recommendations for statutorily-defined core matters. *See Ortiz v. Aurora Health Care, Inc. (In re Ortiz)*, 665 F.3d 906, 915 (7th Cir. 2011).

Finally, the PAT Trustee argues that the Moving Defendants' motion is barred by *res judicata*, collateral estoppel and/or equitable mootness. But because the Moving Defendants were not parties to DBSI's bankruptcy, *res judicata* and collateral estoppel cannot apply. Likewise, the PAT Trustee's half-hearted attempt to plead equitable mootness fails because this is not an appeal of the Confirmation Order.

## ARGUMENT

### I. The Bankruptcy Court Lacked Constitutional Authority To Create The PAT Because Its Creation Did Not Implicate Public Rights; Because The PAT Was Invalidly Formed, It Lacks Standing To Prosecute This Case

*Stern* held that although bankruptcy courts have *statutory* authority to adjudicate various "core" proceedings, they do not have *constitutional* authority to adjudicate private rights, as opposed to public rights. *See* OB 12-16.

The PAT Trustee tries to evade the Supreme Court's reasoning by characterizing *Stern* as a narrow decision limited to cases involving state law counterclaims. AB 12-13. But Article III courts already have applied the reasoning underlying *Stern* beyond its specific facts, thus belying the PAT Trustee's position. *See, e.g., Heller Ehrman LLP v. Arnold & Porter, LLP (In re Heller Ehrman LLP)*, --- F.Supp.2d ----, 2011 WL 6179149, at *3-4 (N.D. Cal. Dec. 13, 2011)

(rejecting argument that *Stern* was limited to state law counterclaims as "unpersuasive given the reasoning used by the Supreme Court in *Stern*"); *McCarthy v. Wells Fargo Bank, N.A. (In re El-Atari)*, 2011 WL 5828013, at *2 (E.D. Va. Nov. 18, 2011) (although *Stern* dealt with counterclaims, under *Stern*'s reasoning bankruptcy court lacked authority to decide another class of core proceedings: fraudulent transfers); *Development Specialists, Inc. v. Orrick, Herrington & Sutcliffe, LLP*, 2011 WL 6780600, at *3 (S.D.N.Y. Dec. 23, 2011) (same); *Sitka Enters., Inc. v. Segarra-Miranda*, 2011 U.S. Dist. LEXIS 90243 (D.P.R. Aug. 10, 2011) (same). These cases demonstrate that *Stern* applies not just to counterclaims but also to other types of statutorily-designated "core" matters, and that a court should apply *Stern's reasoning* (*i.e.*, that the bankruptcy court only may adjudicate public rights) to the particular facts before it, rather than limiting *Stern* to the precise facts that were before the Supreme Court.

As an alternative way of arguing for a "narrow" interpretation of *Stern,* the PAT Trustee suggests that whatever *Stern* might have to say about anything other than state law counterclaims is mere *dicta* and safely ignored. But even if the Supreme Court's discussion of the principles underlying its decision can be characterized as *dicta*, ignoring those principles is contrary to sound jurisprudence in this Circuit:

> The Supreme Court uses dicta to help control and influence the many issues it cannot decide because of its limited docket. "Appellate courts that dismiss these expressions [in dicta] and strike off on their own increase the disparity among tribunals (for other judges are likely to follow the Supreme Court's marching orders) and frustrate the evenhanded administration of justice by giving litigants an outcome other than the one the Supreme Court would be likely to reach were the case heard there."

*McDonald v. Master Fin., Inc. (In re McDonald)*, 205 F.3d 606, 612-13 (3d Cir. 2000) (citation omitted).

Thus, the reasoning underlying *Stern*'s holding is to be heeded, not ignored, and should

3

not be lost in the PAT Trustee's argument over labeling (*i.e.*, narrow vs. broad). Indeed, the Seventh Circuit—the first Court of Appeals to rule on the reach of *Stern*—highlighted the importance of the constitutional issues raised therein:

> Although the Court noted that the question presented was "narrow," it was quite significant as Congress "may no more lawfully chip away at the authority of the Judicial Branch than it may eliminate it entirely." [*Stern*,] 131 S.Ct. at 2620. The Court held that Article III prohibited Congress from giving bankruptcy courts authority to adjudicate claims that went beyond the claims allowance process. *Id.* at 2618. The decision rebuffed an intrusion into the Judicial Branch that would "compromise the integrity of the system of separated powers and the role of the Judiciary in that system, even with respect to challenges that may seem innocuous at first blush." *Id.* at 2620.

*In re Ortiz*, 665 F.3d at 911. This principle—that even small encroachments on the authority of Article III courts should be eliminated—makes clear that *Stern* applies beyond its precise facts.

As one bankruptcy judge has well summarized:

> Although the [Supreme] Court indicated that its decision was a "narrow" one encompassing one "isolated instance," this court must determine the reasons for the Court's decision in order to decide whether the cause of action in *Stern* may meaningfully be distinguished from the causes of action in this adversary proceeding. [. . .]

> The impact of *Stern* is that ... the bankruptcy court must determine whether the proceeding is a matter of public or private right. Matters of private right may not be finally decided by a bankruptcy judge without the consent of the parties.

*Tabor v. Kelley (In re Davis)*, 2011 WL 5429095, at *3 & *15 (Bankr. W.D. Tenn. Oct. 5, 2011).

This Court should (indeed, must) apply the principles articulated by the Supreme Court in *Stern*. The question before the Court is whether the PAT has standing to assert its claims, which depends on whether the PAT was validly formed, which in turn depends on whether its creation intertwined with a public right. It did not. The PAT is not a true bankruptcy litigation trust. It does not liquidate estate claims. Instead, it seeks out assignments of private claims from third parties, to assert against other third parties, for a 20% commission. The business of litigating non-estate claims against third parties for a commission does not implicate any public

4

right created by the Bankruptcy Code.   While it is true that the commissions earned by the Trustee will augment the estate, the mere fact that the exercise of a power will lead to augmentation of the estate does not bring that power within the Bankruptcy Court's constitutional authority. *See Stern v. Marshall*, 131 S.Ct. 2594, 2616, 2618 (2011) (A claim "at common law that simply attempts to augment the bankruptcy estate [is] the very type of claim that … must be determined by an Article III court….   Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself….") (citations omitted; emphasis in original).

Likewise, the fact that the PAT came about as part of a bankruptcy plan does not, without more, implicate a public right.   The Moving Defendants do not suggest that confirmation of plans in general is beyond a bankruptcy court's authority; rather, it was the Bankruptcy Court's discrete exercise of power in authorizing the PAT that was beyond its authority.   If mere relationship to a plan was enough to satisfy *Stern*, then there would be no limit on a bankruptcy court's authority, as long as it exercised that authority through a plan.

In sum, the PAT's creation did not implement a public right and thus the Bankruptcy Court lacked constitutional authority to set up the PAT.   Because the PAT was invalidly formed, the PAT Trustee has no authority or standing to prosecute this case.

## II.    Because The Bankruptcy Court Lacked Authority To Create The PAT, The PAT Trustee Lacks Standing Notwithstanding His Status As Assignee

In another effort to dismiss the significance of *Stern*, the Trustee asserts that he has standing by virtue of the assignments that he obtained. AB 9-12.   In effect, he portrays himself as no different than a private trustee who receives assigned claims from third parties. *Id.*

The glaring flaw here is that the PAT was improperly created in the first place, so it does

not matter whether it received subsequent assignments of claims—the source of the PAT

Trustee's authority, the PAT itself, was beyond the Bankruptcy Court's authority to create.  OB

9-10.  Unlike a private litigation trust, the PAT was a judicially-created entity:

- It was created by the Confirmation Order.

- By order of the Bankruptcy Court, the PAT was funded with bankruptcy estate
  money to finance the prosecution of assigned claims.

- The claimants/assignors received an "invitation" from the Bankruptcy Court to
  join the PAT, which thereby received the Bankruptcy Court's imprimatur.

- In opposing a companion motion to dismiss for failure to state a claim, the PAT
  Trustee argues that he is entitled to certain benefits accorded *bankruptcy trustees
  bringing estate claims*, *i.e.*, a lower threshold for pleading fraud.

Thus, the PAT Trustee's argument that he holds claims that were validly assigned by their

owners is irrelevant, because it ignores the threshold issue:   whether the PAT itself was

constitutionally established.  Because it was not, dismissal is required.

## III.    There Is No "Easy Fix" For The PAT's Constitutional Infirmity

Despite the PAT Trustee's pleas to the contrary, this Court cannot utilize the suggested

expedient of taking an unconstitutional order creating the PAT, calling it a proposed order under

28 U.S.C. § 157(c), and adopting it.  First, the Confirmation Order is not before the Court.

Rather, like an obligor raising an invalid assignment contract as a defense against an assignee,

the Moving Defendants raise a discrete defense—one that does not require the Court to grant any

relief in connection with the Confirmation Order.  *See Ifert v. Miller*, 138 B.R. 159, 166 (E.D.

Pa. 1992) (applying Texas law) *aff'd* 981 F.2d 1247 (3d Cir. 1992) ("the law permits the obligor

to raise as a defense against the assignee the fact that the assignment contract between the

assignor and the assignee was void").  Because the Confirmation Order is not before the Court,

treating it as a recommended order is not feasible.

RLF1 5870208v. 4

Second, the PAT Trustee's suggestion runs afoul of a decision by the only appellate court to address *Stern*, which recognized that 28 U.S.C. § 157(c) allows a bankruptcy court to issue proposed findings only for non-core proceedings, and not for proceedings that are statutorily defined as core but that are outside of the Bankruptcy Court's constitutional authority:

> For the bankruptcy judge's orders to function as proposed findings of fact or conclusions of law under 28 U.S.C. § 157(c)(1), we would have to hold that the debtors' complaints were "not a core proceeding" but are "otherwise related to a case under title 11." *Id.* As we just concluded, the debtors' claims qualify as core proceedings and therefore do not fit under § 157(c)(1).

*In re Ortiz*, 665 F.3d 906, 915 (7th Cir. 2011). The PAT was created under the Confirmation Order, which is statutorily defined as core (*see* 28 U.S.C. § 157(b)(2)(L)), but because the Confirmation Order's PAT provisions do not involve public rights, they fall outside the Bankruptcy Court's constitutional authority. Thus, contrary to the PAT Trustee's invitation, this Court may not improvise a "fix" by "adopting" the PAT's creation, because § 157(c) does not allow for that type of relief.

Third, *Ortiz* aside, treating the Confirmation Order's PAT provisions as a report and recommendation under § 157(c) would be procedurally improper and inequitable. The Court would need to conduct a hearing on adoption or rejection of the provisions, with the appropriate form of notice and an opportunity to be heard. Specifically, Federal Rule of Bankruptcy Procedure 9033 requires the clerk to serve all parties with copies of the proposed findings of fact and conclusions of law, which in turn triggers an objection period to the proposed findings. Because there has been no compliance with Bankruptcy Rule 9033, this Court cannot fairly treat the PAT provisions of the Confirmation Order as recommendations.

## IV.   *Res Judicata*, **Collateral Estoppel and/or Equitable Mootness Do Not Apply**

### A.   *Res Judicata*

*Res judicata* is the wrong mode of analysis here because the Moving Defendants are not

7

seeking to relitigate the Plan. Indeed, the Moving Defendants do not seek *any relief whatsoever* with respect to the Plan, and the relief that they do seek—dismissal of this case—does not require the Court to take *any* action with regard to the Plan.

Even if *res judicata* was the proper mode of analysis here, the PAT Trustee could not satisfy the doctrine's elements. While principles of *res judicata* apply to confirmation orders generally, these principles may be invoked only when there is: "(1) a final judgment on the merits in a prior suit involving (2) *the same parties or their privies* and (3) a subsequent suit based on the same cause of action." *Duhaney v. U.S.*, 621 F.3d 340, 347 (3d Cir. 2010) (citation omitted and emphasis added). Here, the Moving Defendants were not parties to DBSI's bankruptcy case. None were served with pleadings in the DBSI bankruptcy, including the disclosure statement, Plan or notice of the confirmation hearing. OB 7-8. None are creditors of DBSI, or filed a proof of claim in DBSI's bankruptcy. *Id.* Thus, the Moving Defendants are not the same parties who were parties to the confirmation hearing. Principles of *res judicata* therefore do not preclude the Moving Defendants from raising the PAT Trustee's lack of standing as a defense in this case.

The PAT Trustee's only arguments to the contrary cannot withstand scrutiny. First, he argues that a "Schedule of Non-Exclusive List of Potential Defendants in Non-Estate Causes of Action" should have put the Moving Defendants on notice of the Plan. AB 17. But that schedule was an exhibit to the disclosure statement, *which never was served on the Moving Defendants*, as they were not parties to DBSI's bankruptcy.

Second, the PAT Trustee argues that the Moving Defendants "may hope to invoke the rule that subject matter jurisdiction can be raised at any time in a proceeding," and then argues that any such attempt must fail because challenges to the Bankruptcy Court's jurisdiction must

be brought before entry of the Confirmation Order. AB 18. This argument is a straw man. *Stern* expressly noted that it was not dealing with subject matter jurisdiction, but rather a bankruptcy court's constitutional authority under 28 U.S.C. § 157:

> Section 157 allocates the *authority* to enter final judgment between the bankruptcy court and the district court. *See* §§ 157(b)(1), (c)(1). *That allocation does not implicate questions of subject matter jurisdiction. See* § 157(c)(2) (parties may consent to entry of final judgment by bankruptcy judge in non-core case).

*Stern*, 131 S. Ct. at 2607 (emphasis added). The Moving Defendants are not challenging the Bankruptcy Court's subject matter jurisdiction. Rather, because the Bankruptcy Court lacked constitutional authority to establish the PAT, the PAT lacks standing to pursue the assigned claims asserted in the Complaint, and accordingly *this Court* lacks subject matter jurisdiction.

   B.   *Collateral Estoppel*

   The PAT Trustee's reliance on collateral estoppel is equally unavailing. Without any discussion, the Trustee simply concludes that collateral estoppel applies here. But even a cursory review of the doctrine reveals that it cannot. Collateral estoppel only may be invoked when:

> (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action.

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA Inc.,* 458 F.3d 244, 249 (3d Cir. 2006) (citations omitted). "We have also considered whether the party being precluded 'had a full and fair opportunity to litigate the issue in question in the prior action.'" *Id.* (citation omitted).

   Here, the Moving Defendants were not parties to DBSI's bankruptcy case and did not participate in the confirmation proceedings. OB 7-8. So they were not "represented in the prior action," and they did not have "a full and fair opportunity to litigate the issue in the prior action." *L'Oreal*, 458 F.3d at 249. Moreover, the precise issue here never was "actually litigated" before

9

the Bankruptcy Court. *See* D.I. 5906, Case No. 08-12687 (Chapter 11 Trustee's memorandum of law, summarizing objections to DBSI's Plan) (relevant pages attached hereto as Exhibit A). Accordingly, collateral estoppel does not apply here.

C.     *Equitable Mootness*

"Under the doctrine of equitable mootness, an appeal should be dismissed, even if the court has jurisdiction and could fashion relief, if the implementation of that relief would be inequitable." *In re PWS Holding Corp.*, 228 F.3d 224, 235-36 (3d Cir. 2000). The doctrine does not apply here because this proceeding is not an appeal. The relief sought by the Moving Defendants—dismissal of this litigation—does not implicate the Confirmation Order and thus would not risk unraveling the Plan or give rise to any of the concerns underlying the equitable mootness doctrine.[3]

## CONCLUSION

By what constitutional authority does a bankruptcy court create, fund and oversee a special purpose litigation trust whose mission is to litigate non-bankruptcy claims for hire? *Stern* makes clear that the Bankruptcy Court had no such authority. Accordingly, for the foregoing reasons, the Moving Defendants respectfully request that this Court enter an order dismissing this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because the plaintiff lacks standing.

---

[3] Even if it made sense to apply the doctrine here, the PAT Trustee cannot satisfy its elements. The PAT involves only a specific provision of the Plan and a successful challenge to the PAT Trustee's standing would not upset the Plan itself. *See, e.g., United Artists Theatre Co. v. Walten (In re United Artists Theatre Co.)*, 315 F.3d 217, 228 (3d Cir. 2003) (rejecting equitable mootness argument where requested remedy would "not undermine the Plan's foundation" but rather sought to invalidate specific provision); *In re PWS*, 228 F.3d at 237 (same); *see also In re Semcrude L.P.*, 2012 WL 8597, at *1 (3d Cir. Jan. 3, 2012) ("We have emphasized that th[e] doctrine of equitable mootness should be 'limited in scope and cautiously applied.'") (citation omitted). Here, the PAT could return its war chest for distribution to DBSI's creditors, and the assignors of the PAT's claims can bring these actions on their own behalves.

10

Respectfully submitted,

**MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN**

By: */s/ Art C. Aranilla*
Art C. Aranilla (No. 4516)
1220 North Market Street, 5th Fl.
Wilmington, DE 19801
Telephone: 302.552.4354
Facsimile: 302.651.7905
acaranilla@mdwcg.com

**AND**

**MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN**
Denis C. Dice
Joel Wertman
1845 Walnut Street
Philadelphia, PA  19103
Telephone:  (215) 575-2779
*Attorneys for Triad Advisors, Inc.*
*and GWR Investments*

**AND**

**MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN**
James A. McGovern
U.S. Steel Tower, Suite 2900
600 Grant Street
Pittsburgh, PA  15219
412-803-1180
412-803-1188 (Fax)
jamcgovern@mdwcg.com
*Attorneys for Investors Capital Corporation*

11

**FERRY, JOSEPH & PEARCE, P.A.**

By: */s/ Theodore J. Tacconelli*
Theodore J. Tacconelli (No. 2678)
824 Market Street, Suite 1000
P.O. Box 1351
Wilmington, DE  19899-1351
Telephone:  (302) 575-1555
Facsimile:  (302) 575-1714
ttaconelli@ferryjoseph.com

**AND**

**BIRGE & MINCKLEY, PC**

Carla B. Minckley
Thomas D. Birge
9055 East Mineral Circle, Suite 110
Centennial, Colorado 80112-3457
Telephone (303) 860-7100
Facsimile (303) 860-7338
cminckley@brigeminckley.com
tbirge@brigeminckley.com
***Attorneys for Geneos Wealth Management, Inc.***

**POLSINELLI SHUGHART**

By: */s/ Christopher A. Ward*
Christopher A. Ward (Del. Bar No. 3877)
Shanti M. Katona (Del. Bar No. 5352)
Andrew J. Nazar (admitted *pro hac vice*)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
cward@polsinelli.com
skatona@polsinelli.com
***Attorneys for Beneficial Investment Services, Inc.***

**RICHARDS LAYTON & FINGER, PA**

By: */s/ Robert J. Stearn, Jr.*
Robert J. Stearn, Jr. (No. 2915)
Cory D. Kandestin (No. 5025)
Julie A. Finocchiaro (No. 5303)
920 N. King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
stearn@rlf.com
kandestin@rlf.com
finnocchiaro@rlf.com

**AND**

**FAEGRE & BENSON LLP**

Terri L. Combs
Jeff J. Hicks
801 Grand Ave, Suite 3100
Des Moines, Iowa 50309
Telephone: (515) 447-4107
Facsimile: (515) 248-9010
tcombs@faegre.com
jjhicks@faegre.com

*Attorneys for Woodbury Financial Services, Inc.*
*and VSR Financial Services, Inc.*

13

**RICHARDS LAYTON & FINGER, PA**

By: */s/ Robert J. Stearn, Jr.*
Robert J. Stearn, Jr. (No. 2915)
Cory D. Kandestin (No. 5025)
Julie A. Finocchiaro (No. 5303)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE   19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
stearn@rlf.com
kandestin@rlf.com
finocchiaro@rlf.com

**AND**

**JONES, BELL, ABBOTT, FLEMING
& FITZGERALD, L.L.P.**
Craig Bockman, Esq.
601 S. Figueroa Street, 27th Floor
Los Angeles, California 90017
Telephone: (213) 485-1555
Facsimile: (213) 689-1004
crbockman@jonesbell.com

*Attorneys for Crown Capital Securities, L.P.*

14