IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JAMES R. ZAZZALI, as Trustee for the DBSI Private Actions Trust,

        Plaintiff,

v.

AFA FINANCIAL GROUP, et al.,

        Defendants.

Civil Action No: 11-744 GMS

## REPLY IN SUPPORT OF DEFENDANT WILSON-DAVIS & COMPANY INC.'S MOTION TO DISMISS ALL COUNTS OF PLAINTIFF'S COMPLAINT

BUCHANAN INGERSOLL & ROONEY PC

Geoffrey G. Grivner (#4711)
1105 North Market Street, Suite 1900
Wilmington, DE 19801-1054
(302) 552-4200
geoffrey.grivner@bipc.com

*Attorneys for Defendant Wilson-Davis & Company, Inc.*

# TABLE OF CONTENTS

I. LEGAL STANDARD FOR MOTION TO DISMISS...........................................................1

III. THE TRUSTEE'S SECURITIES LAW CLAIMS FAIL AS A MATTER OF LAW.........1

    A. A broker's dissemination of allegedly inaccurate or fraudulent offering materials does not qualify, as a matter of law, as a material misstatement or omission under § 10(b) and Rule 10b-5. ...............................................................2

    B. The Trustee has failed to state with particularity the circumstances surrounding the alleged misstatements and omissions. ...........................................4

    C. The Trustee Fails to Allege Any Facts Giving Rise to an Inference of Scienter. ............................................................................................................5

    D. The Trustee's "Controlling Person" Claim Under § 20(a) of the Securities Exchange Act (Second Cause of Action) Fails to State a Claim as a Matter of Law. ..................................................................................................7

IV. THE TRUSTEE'S SECURITIES LAW CLAIMS ARE TIME BARRED. ........................8

V. THE TRUSTEE'S BREACH OF CONTRACT CLAIMS (THIRD CAUSE OF ACTION) FAIL TO STATE A CLAIM. .............................................................................8

VI. THE TRUSTEE'S COMMON LAW FRAUD CLAIMS (FOURTH CAUSE OF ACTION) FAIL TO STATE A CLAIM. .............................................................................9

VII. THE TRUSTEE'S NEGLIGENCE AND BREACH OF FIDUCIARY CLAIMS (FIFTH AND SIXTH CAUSES OF ACTION) FAIL TO STATE A CLAIM. ..................9

VIII. CONCLUSION..................................................................................................................10

Case 1:11-cv-00744-GMS   Document 127   Filed 03/30/12   Page 3 of 14 PageID #: 926

# TABLE OF AUTHORITIES

**Cases**

Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 683 (7th Cir. 1992)..........................1

Brown v. J.P. Turner & Co., 2011 U.S. Dist. LEXIS 53118 (N.D. Ga. May 17, 2011) ................2

Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc., 497 F.3d 546, 550 (5th Cir. 2007) .4

Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 114 S. Ct. 1439, 128 L. Ed. 2d 119 (1994)) ................................................................................................3

City of Roseville Emp. Ret. v. Horizon Lines, Inc., 442 Fed. Appx. 672, 676 (3d Cir. 2011).......5

Com Primecall, Inc., 2003 WL 22989669 at *6 (Bankr. S.D.N.Y. Dec. 11, 2003) ........................2

De Kwiatkowski v. Bear, Stearns & Co., 306 F.3d 1293, 1302 (2d Cir. 2002) .............................10

In re J.P. Jeanneret Associates, Inc., 769 F. Supp. 2d 340 (S.D.N.Y. 2011)..................................6

In Re Van Der Moolen Holding N.V. Sec. Litig, 405 F. Supp. 2d 388, 403 (S.D.N.Y. 2005).......3

Institutional Investors Group v. Avaya, Inc., 564 F.3d 242, 278 (3d Cir. 2009)............................8

Janus Capital Grp. Inc. v. First Derivative Traders, 131 S. Ct. 2296, 2299 (2011) ......................2

Kirschner v. Bennett, 759 F. Supp. 2d 301, 323 (S.D.N.Y. 2010) .................................................9

Matrixx Initiatives, Inc. v. Siracusano, 131 S. Ct. 1309 (2011).....................................................1

Pekarek v. Sunbeam Products, 2006 U.S. Dist. LEXIS 30551 (D. Kansas May 12, 2006)............8

SEC v. Tambone (Tambone II), 597 F.3d 436 (1st Cir. 2010).......................................................2

Starr v. Georgeson Shareholder, Inc., 412 F.3d 103, 109 (2d Cir. 2005)......................................7

iii

Defendant Wilson-Davis & Company, Inc. ("Wilson-Davis") respectfully submits this reply in support of its motion to dismiss all causes of action in plaintiff James R. Zazzali's "(the "Trustee") complaint (the "Complaint").

## I. LEGAL STANDARD FOR MOTION TO DISMISS.

The Trustee claims that the Complaint "satisfies the basic threshold for pleading" under Twombly and Iqbal, but says nothing of the pleading threshold under the PSLRA. Answering Brief at 3 [D.I. 115]. The Trustee contends that in a "business case" the plaintiff need only plead facts sufficient to "raise a reasonable expectation that discovery will reveal evidence.'" Id. This is not a "business case." And nothing in the Mattrix Initiatives case cited by the Trustee relaxes the pleading requirements for securities fraud cases. See Matrixx Initiatives, Inc. v. Siracusano, 131 S. Ct. 1309 (2011).[1] The Trustee thus is required to meet the threshold pleading requirement under PSLRA. This he cannot do.

The Trustee likewise fails to establish that Rule 9(b)'s pleading standard should be relaxed. Rule 9(b) is needed because of the damage that even baseless fraud claims can do to an individual or a business. As Judge Posner stated, "Accusations of fraud can do serious damage to the goodwill of a business firm or a professional person. People should be discouraged from tossing such accusations into complaints in order to induce advantageous settlements or for other

---

[1] Mattrix does not hold that the heightened pleading standards of the PLSRA and Rule 9(b) should be relaxed. Matrixx Initiatives, Inc., 131 S. Ct. at 1314. Instead, Mattrix addresses the issue of whether the plaintiffs were required to plead that the defendant knew of a "statistically significant number of adverse events" related to its product. Id. at 1322. On that narrow issue, the Court held that the plaintiffs had "alleged facts plausibly suggesting that reasonable investors would have viewed these particular [adverse event] reports as material." Id. at 1314.

ulterior purposes. Rule 9(b) does that." Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 683 (7th Cir. 1992). Rule 9(b) therefore requires specific details.

The Trustee's supporting authorities are all distinguishable in that (1) they are all bankruptcy court cases; and (2) Rule 9(b) was only relaxed when critical information was within the defendants' exclusive control. See Answering Brief at 4-5. In contrast, this is not a bankruptcy case and Wilson Davis does not have exclusive control of critical information. Indeed, the Trustee has unfettered access to all of DBSI's records, documents, and former employees. As a result, Rule 9(b) should not be relaxed and the Trustee's failure to plead with particularity requires dismissal. See In re RSL Com Primecall, Inc., 2003 WL 22989669 at *6 (Bankr. S.D.N.Y. Dec. 11, 2003).

## II. THE TRUSTEE'S SECURITIES LAW CLAIMS FAIL AS A MATTER OF LAW.

### A. A broker's dissemination of allegedly inaccurate or fraudulent offering materials does not qualify, as a matter of law, as a material misstatement or omission under § 10(b) and Rule 10b-5.

A broker's dissemination of allegedly fraudulent offering materials, prepared by a third-party, does not qualify as a material misrepresentation or omission under the securities laws. See Brown v. J.P. Turner & Co., 2011 U.S. Dist. LEXIS 53118 (N.D. Ga. May 17, 2011); SEC v. Tambone (Tambone II), 597 F.3d 436 (1st Cir. 2010). The Trustee cannot dispute either the holding or the applicability of Brown and Tambone II to this case. See Answering Brief at 6-10. Accordingly, he just ignores them.

Unable to distinguish Brown and Tambone II, the Trustee focuses instead on Janus Capital. See Answering Brief at 7. In Janus Capital, the Supreme Court addressed the question of whether "a mutual fund investment adviser can be held liable" under the securities laws for

2

false statements included in client prospectuses. See Janus Capital Grp. Inc. v. First Derivative Traders, 131 S. Ct. 2296, 2299 (2011). The Court held that the investment adviser "**cannot be held liable** because it did not make the statements in the prospectuses." Id. (emphasis added). The Court noted that its holding was based on Central Bank of Denver, N.A., where the Court previously held that "aiders and abettors" to securities fraud – even those who contribute "substantial assistance" to the making of false statements – cannot be held liable under the securities laws. Id. at 2302 (quoting Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 114 S. Ct. 1439, 128 L. Ed. 2d 119 (1994)). Thus, if Janus Capital stands for anything, it is that securities professionals like Wilson Davis are not liable for allegedly inaccurate or false statements made in their client's offering materials.[2] See id.

Ignoring the actual holding of Janus Capital, the Trustee seizes on a single sentence from the decision stating that "the maker of the statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." Answering Brief at 7. The Trustee claims that Wilson Davis had "ultimate authority" for the statements in DBSI's offering materials based on its contract with DBSI. Id. Because that contract provides for a "due diligence expense reimbursement," the Trustee leaps to the unsupported conclusion that Wilson Davis "was undoubtedly the maker of the representations as to due diligence contained" in the offering materials. Id. at 9.

---

[2] The Trustee cites to In Re Van Der Moolen Holding N.V. Sec. Litig., 405 F. Supp. 2d 388, 403 (S.D.N.Y. 2005) for the proposition that statements " indirectly attributable to a defendant" are actionable, provided that the defendant was "the original and knowing source of a misrepresentation." Answering Brief at 9. Unlike this case, the parent company in Van Der Moolen was in fact the "original source" of the false and misleading data. See id. at 402-04.

3

Nothing could be further from the truth. Wilson Davis did not prepare or otherwise have any involvement in the preparation of the offering materials. See Motion at 9. And none of the statements in the offering materials are attributable to Wilson Davis. See Complaint [D.I. 1], Exhibits C-D [D.I. 1-5]. As such, it is difficult to imagine a scenario in which Wilson had any less "authority" over the statements in the offering materials, especially in light Janus Capital, Brown, and Tambone II, which uniformly hold that a broker does not "make" a statement by merely circulating investment prospectuses prepared by a client.

### B.   The Trustee Has Failed to State with Particularity the Circumstances Surrounding the Alleged Misstatements.

The Trustee contends that he has plead his securities fraud claims with particularity, but still fails to identify the circumstances surrounding the alleged fraud. See Answering Brief at 6. The Trustee claims that the "the identity of the PAT beneficiaries is now public information," as if that is enough to meet the mandated particularity requirement. Id. And while the Trustee does identify the securities at issue in this case, he fails allege any specific facts regarding those transactions. Id. Instead, the Trustee reverses the pleading requirements, claiming that Wilson Davis "is in a far better position than [the Trustee] to determine the date, place and time of the [] allegedly fraudulent activity." Id. But the law states that given the serious nature of the Trustee's fraud claim, the Trustee must know the details and particularities of such claims before pleading such claims. The Trustee's failure to plead any basic facts or details in regard to Wilson-Davis is thus fatal to his securities fraud claims. See Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc., 497 F.3d 546, 550 (5th Cir. 2007).

4

## C. The Trustee Fails to Allege Any Facts Giving Rise to an Inference of Scienter.

The Trustee claims that City of Roseville is not controlling because the court distinguished between the price-fixing conspiracy at issue in that case from cases where "executive-defendant's examination of routine financial data . . . would have informed him of the falsity of his statements."3 Answering Brief at 12. That fact, however, does not suffice to distinguish City of Roseville. The price-fixing conspiracy in City of Roseville is factually similar to the Ponzi scheme at issue in this case. And this case is not one where Wilson Davis could have uncovered the alleged Ponzi scheme by merely examining "routine financial data."

Nonetheless, the Trustee claims the Court should disregard City of Roseville in favor of City of Monroe v. Bridgetone Corp. Answering Brief at 12. The Trustee claims that Bridgestone is controlling because it involves "the kind of egregious misstatement that was lacking in City of Roseville." Bridgestone involved a tire manufacturer who had information that its tires were rupturing and then "engaged in a variety of tactics, such as a large-scale secret settlement . . . to keep the scope of the problem from safety regulators in the United States and several other countries, as well as from investors." City of Roseville Emp. Ret. v. Horizon Lines, Inc., 442 Fed. Appx. 672, 676 (3d Cir. 2011) (discussing Bridgestone). Based on those "extraordinary" facts, the Sixth Circuit found an inference of scienter. Id. The nature and scope of the fraud at issue in Bridgestone was so "extraordinary" that the Third Circuit refused to adopt

---

3 Notably, the Trustee does not directly challenge the applicability of the "corporate scienter" rule outlined in City of Roseville. See generally Answering Brief. The Trustee likewise does not directly challenge the City of Roseville's holding that "group pleading" is prohibited. See id.

Bridgestone's holding in Horizon Lines, Inc.[4] Id. This case is much closer to City of Roseville than it is to Bridgestone.

Whether under City of Roseville or Bridgestone, the Trustee still cannot identify any facts from which to conclude or infer that a Wilson-Davis agent or employee made false or misleading statements with scienter. See Answering Brief at 11-13. The Trustee claims that Wilson Davis was aware of "a number of red flags," but fails to identify any such facts in the Complaint. See Answering Brief at 13. He cites to paragraphs 178, 204, and 225 of the Complaint for support, but those paragraphs do not allege any facts from which to conclude or infer that any agent or employee of Wilson Davis was aware of "red flags"[5] much less establish the "strong inference of scienter" necessary under the PSLRA. See Complaint at ¶¶ 178, 204, 225. Even if the Trustee had alleged such facts (which he did not), the existence of "red flags" will not satisfy the scienter requirement. See In re J.P. Jeanneret Associates, Inc., 769 F. Supp. 2d 340 (S.D.N.Y. 2011) ("the existence of 'red flags' does not satisfy the scienter requirement").

---

[4] The Third Circuit provided this hypothetical to illustrate the "extraordinary" facts at work in Bridgestone:

> Suppose General Motors announced that it had sold one million SUVs in 2006, and the actual number was zero. There would be a strong inference of corporate scienter, since so dramatic an announcement would have been approved by corporate officials sufficiently knowledgeable about the company to know that the announcement was false.

Horizon Lines, Inc., 442 Fed. Appx. at 676.

[5] The Trustee alludes to "numerous red flags," but only identifies one, namely a rate of return of 8-11%. Answering Brief at 12; Complaint at ¶ 255. The Trustee does not cite to a single case where a court was willing to infer scienter based on 8-11% rate of return because there are none. See SEC v. Cohmad Secs. Co., 2010 WL 363844 at *5 (S.D.N.Y. Feb. 2, 2010) (holding that 46% rate of return insufficient to establish scienter).

### D. The Trustee Fails to Allege Any Facts from Which to Conclude or Infer that the Investors Relied on Wilson-Davis' Alleged Misstatements or Omissions.

The Trustee claims that reliance may be presumed in cases involving false allegations of due diligence, citing to J.P. Jeanneret. Answering Brief at 14. The due diligence representations in J.P. Jeanneret included, among others:

> The Investment Manager believes that satisfactory rates of return can be achieved on a consistent basis through various hedging and arbitrage strategies, **which have been thoroughly researched by the Investment Manager and its Advisor, Ivy Asset Management**.

J.P. Jeanneret, 769 F. Supp. 2d at 356 (emphasis added). In stark contrast to J.P. Jeanneret, the due diligence representations at issue here merely provide that DBSI will pay a ".05% for due diligence expense reimbursement." Complaint, Exhibit C, ¶ 4.1. Because that provision is minor and not specific, it is not entitled to same presumption of reliance as found in J.P. Jeanneret.

Moreover, the Trustee still has not (and cannot) identify any factual allegations in the Complaint from which to conclude that the actual investors who dealt with Wilson-Davis actually relied on the specific misstatements or omissions allegedly made by Wilson-Davis. See Starr v. Georgeson Shareholder, Inc., 412 F.3d 103, 109 (2d Cir. 2005). The Trustee nowhere identifies who relied upon who's statements. Both the Complaint and the Trustee's opposition are silent on these points.

### E. The Trustee's "Controlling Person" Claim Under § 20(a) of the Securities Exchange Act (Second Cause of Action) Fails to State a Claim as a Matter of Law.

The Trustee does not dispute that its "controlling person" claim under Section 20(a) is derivative of its Section 10(b) claim. Answering Brief at 19. Because the Trustee cannot establish that his Section 10(b) claim for the reasons outlined above, the Trustee's derivative

7

controlling person claim fails as a matter of law. See Institutional Investors Group v. Avaya, Inc., 564 F.3d 242, 278 (3d Cir. 2009). Further, Wilson Davis does not have a "parent corporation." Motion at 17.

### III. THE TRUSTEE'S SECURITIES LAW CLAIMS ARE TIME BARRED.

Wilson-Davis joins in the additional statute of limitations arguments asserted by Broker Dealer Defendants in their Reply Brief in Support of Motion to Dismiss. [D.I. 123.] For all of the reasons set forth therein and in the opening briefs, the Trustee's securities fraud claims should be dismissed under the applicable statute of limitations.

### IV. THE TRUSTEE'S BREACH OF CONTRACT CLAIMS (THIRD CAUSE OF ACTION) FAIL TO STATE A CLAIM.

In its Complaint, the Trustee alleges that Wilson Davis breached the "contractual relationships which were entered into between investors and the Broker Defendants." Complaint at 353. The Trustee now claims for the first time that Wilson Davis also breached "Soliciting Dealer Agreement" ("SDA") between DBSI and Wilson Davis. Answering Brief at 18. The investors were not party to the SDA, but the Trustee contends that they "should be considered at least intended third-party beneficiaries as to the SDA." Id. The Trustee fails to cite a single supporting authority.

More importantly, it is undisputed that the Complaint does not allege facts supporting the breach of contract claim. Answering Brief at 18. The Trustee attempts to cure this defect by providing an inadequate explanation for the basis of his breach contract claim. Id. His failure to allege those facts in the Complaint is fatal to his breach of contract claim. See Pekarek v. Sunbeam Products, 2006 U.S. Dist. LEXIS 30551 (D. Kansas May 12, 2006).

8

## V. THE TRUSTEE'S COMMON LAW FRAUD CLAIMS (FOURTH CAUSE OF ACTION) FAIL TO STATE A CLAIM.

The Trustee's common law fraud claim fails for the same reasons that his securities fraud claims fail, including, among other reasons, that the Trustee does not allege who at Wilson-Davis made any allegedly fraudulent statements, when the statements were made or disseminated and to whom they were disseminated. See Motion at 18; Answering Brief at 16. Again, no particularity whatsoever.

## VI. THE TRUSTEE'S NEGLIGENCE AND BREACH OF FIDUCIARY CLAIMS (FIFTH AND SIXTH CAUSES OF ACTION) FAIL TO STATE A CLAIM.

In the case of non-discretionary accounts, the "broker's office . . . is simply to buy and sell." See Brown, 2011 U.S. Dist. LEXIS 53118 at *10.). The Trustee concedes as much, admitting that because the accounts were non-discretionary, Wilson Davis does not have "any general or open-ended fiduciary duty" to the investors. Answering Brief at 16-17. The Trustee counters that "the absence of a general fiduciary duty does not eliminate the possibility of a duty to disclose a fact that is significant to the broker-customer relationship." Id. at 16. On that basis alone, the Trustee argues that Wilson Davis had a fiduciary duty arising from the "specific transactions" at issue in this case. Id. at 17.

The Trustee cites to Kirschner v. Bennett for support, but Kirschner is in direct opposition.[6] Kirschner affirms that "where a broker does not have discretionary trading authority over an account, the broker's only duty is the proper execution of transactions upon

---

[6] Tellingly, the Trustee only cites to the fraudulent inducement section of the Kirschner opinion, avoiding the breach of fiduciary duty section which actually addresses the fiduciary duty question at issue in this case. See Answering Brief at 17.

explicit customer instructions." Kirschner v. Bennett, 759 F. Supp. 2d 301, 323 (S.D.N.Y. 2010). More importantly, Kirschner rejected the very type of "specific transaction" duty advanced by the Trustee in this case. Id. at 325. The court held that such an "argument proves too much as it essentially imposes a fiduciary duty on a broker for all non-discretionary accounts that the broker fails to make good on." Id. The court further noted that the only exceptions to the non-discretionary account rule involve "special circumstances" such "customer incapacity or simplicity" or "a closer than arms-length relationship." Id. at 326 n.22.

As in Brown and Kirschner, the Trustee has not yet plead that Wilson Davis had any duty to the investors other than to "buy and sell." The Trustee does not allege a single fact from which to conclude or infer that any "special circumstances" exist in this case to justify the imposition of special duties. See Answering Brief at 16-17. And he does not cite to a single authority establishing that Wilson Davis had a duty arising from the "specific transactions" at issue in this case.[7]

## VII. CONCLUSION.

Based on the foregoing, Wilson Davis respectfully requests that this Court dismiss in its entirety the Trustee's Complaint pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).

---

[7] The only other case cited by the Trustee in support of his "specific transaction" theory is De Kwiatkowski v. Bear, Stearns & Co., 306 F.3d 1293, 1302 (2d Cir. 2002). Like Brown and Kirschner, however, the De Kwiatkowski case holds that brokers do not have fiduciary duties relating to non-discretionary accounts. See id.

DATED: March 30, 2012

                    BUCHANAN INGERSOLL & ROONEY PC

                    By   /s/ Geoffrey G. Grivner
                        Geoffrey G. Grivner (#4711)
                        1105 North Market Street
                        Suite 1900
                        (302) 552-4200
                        geoffrey.grivner@bipc.com

                    *Attorneys for Defendant Wilson-Davis & Company, Inc.*