# EXHIBIT E

**DBSI Securities Copy**

January 25, 2008

Ken Gross
Strategic Financial
One Boardwalk Ave.
Suite 103
Thousand Oaks, CA 91360

      RE:    DBSI 2008 Notes Corporation
                Investment Advisor Agreement

Dear Ken Gross:

      DBSI Securities Corporation (the "Company") has entered into a Distribution Agreement (the "Distribution Agreement"), a copy of which is attached hereto as Exhibit A, with DBSI 2008 Notes Corporation, an Idaho limited liability company (the "Issuer"), under which the Company has agreed to use its best efforts to sell 9.5% Notes (the "Notes") to Accredited Investors (as that term is defined in Regulation D under the 1933 Act). Unless the context otherwise requires, all of the capitalized terms used herein shall have the meaning given to such terms in the Distribution Agreement or in the Memorandum.

      As described in the Confidential Private Placement Memorandum, dated January __, 2008, (the "Memorandum"), a copy of which

      has previously been, or is concurrently herewith, furnished to you, the Issuer is offering $50,000,000[1] aggregate principal amount of 9.5% Notes due December 31, 2015 (the "Notes") The Notes are being issued with a minimum purchase of $50,000 and in additional denominations of $1,000; however, smaller purchases are available in the sole discretion of the Issuer.

      In connection with the performance of its obligations under the Distribution Agreement, the Company desires to give the clients of the Investment Advisor the opportunity to purchase the Notes, and the Investment Advisor is willing and desires to provide its clients with information concerning the Investment and the procedures for subscribing for the Notes. Investors who, in connection with their purchase of the Interest, have engaged the services of the Investment Advisor with whom the investor has agreed to pay a fee for investment advisory services in lieu of normal commissions based on the volume of securities sold will purchase the Notes net of selling commissions. The Investment Advisor shall have no obligation under this agreement to advise it clients to purchase the Notes.

      In consideration of the premises and terms and conditions thereof, it is agreed between the Company and the Investment Advisor as follows:

1.    **Offering and Sale of Notes/Best Efforts Offering.** Subject to the terms and conditions herein set forth, the Company hereby makes available for purchase by the clients of the Investment Advisor the Notes described in the Memorandum. The Investment Advisor hereby covenants, warrants and agrees that, in regard to any purchase of the Notes by its clients, it will comply with all of the terms and conditions of the Memorandum, all applicable state and federal laws, including the Securities Act, the Investment Advisers Act of 1940, as amended, and any and all regulations and rules pertaining

---

[1] Subject to increase to no more than $90,000,000 at the sole and absolute discretion of the Company.

1

Investment Advisors Agreement							Page 2

thereto, heretofore or hereafter issued by the Securities and Exchange Commission (the "SEC"). Neither the Investment Advisor nor any other person shall have any authority to give any information or make any representations in connection with the Notes other than as contained in the Memorandum, as amended and supplemented, and as is otherwise expressly authorized in writing by the Company. There is no minimum amount required to be sold and therefore, no bank escrow account for the offering.

    1.1    All sales of the Notes will be conditioned upon acceptance by the Issuer of the Subscription Documents of each subscriber to the Notes consisting of the Subscription Agreement, duly executed by each such Subscriber and accompanied by payment of the purchase price of the Notes subscribed to by each subscriber. The Issuer shall have the right, in its sole and absolute discretion to reject the subscription of any potential purchaser of Notes.

    1.2    The Interest may be purchased by clients of the Investment Advisor only where the Notes may be legally offered and sold, only by such persons in such states who shall be legally qualified to purchase the Interest, and only by such persons in such states in which the Investment Advisor is registered as an Investment Advisor or is exempt from any applicable registration requirements.

    1.3    The Investment Advisor will use every reasonable effort to assure that the Interest are purchased by persons who warrant or represent that they or their beneficiaries meet the financial suitability requirements as set forth in the Memorandum and such other conditions as may be required by the states in which the Interest are offered or sold.

**2.**    **Representations and Warranties of the Issuer.** All of the representations and warranties contained in Section 2 of the Distribution Agreement are incorporated herein by this reference and given to you by the Issuer as though fully set forth herein.

**3.**    **Representations, Warranties, and Covenants of the Investment Advisor.** You, as a Investment Advisor, represent, warrant, and covenant with us as follows:

    3.1    You are presently registered as an investment advisor under the Investment Advisers Act of 1940, as amended, and presently organized, registered, or licensed and in good standing as an investment advisor by the appropriate regulatory agency of each state in which you have clients, or are exempt from such registration requirements.

    3.2    You will: (a) comply with all federal laws, the laws of any state or jurisdiction in which you have clients; (b) remain registered as an investment advisor under the Investment Adviser Act of 1940, as amended; (c) be registered or licensed as an investment advisor by the appropriate regulatory agency of each state in which you have clients, or are exempt from such registration requirements; (d) use only the Memorandum as provided to you by the Issuer or us; (e) make no representation with respect to the offering and/or sale of the Notes not contained in the Memorandum; and (f) at all times fully comply with all instructions respecting the offer and sale of the Notes which may from time to time be communicated to you by us, specifically including each and every instruction set forth in the Memorandum.

    3.3    You will comply with Section 314 of the USA PATRIOT Act as it relates to the anti-money laundering (AML) policy and procedures requirements. You will notify DBSI Securities Corporation when an investor or potential investor subject to this agreement is identified under your internal AML policy and you are required to notify any federal or state authority about that individual or entity.

    3.4    As an investment advisor, you are aware of the suitability standards set forth in the Memorandum that an offeree must meet and represent. As such, you will make reasonable inquiry to assure that there is compliance with such standards.

      3.5    In recommending the purchase of the Notes in the program, you shall: (a) have reasonable grounds to believe, on the basis of information obtained from the offeree concerning his investment objectives, other investments, financial situation and needs, and any other information known by you or any associated person, that: (i) the offeree is or will be in a financial position appropriate to enable him to realize to a significant extent the benefits described in the Memorandum; (ii) the offeree has a fair market net worth sufficient to sustain the risks inherent in the offering, including loss of investment and lack of liquidity; (iii) the Notes are otherwise suitable for the offeree; (iv) the offeree is an Accredited Investor (as that term is defined in Regulation D under the 1933 Act) and (b) maintain in your files of all the pertinent facts relating to the liquidity and marketability of the Notes during the term of the offering.

      3.6    Documents disclosing the basis upon which the determination of suitability was reached as to each offeree.

      3.7    Prior to your client executing a purchase agreement for the Notes, you shall inform the offeree. You will not execute any sale of the Notes into a discretionary account without prior written approval of the transaction by the investor.

      3.8    You will furnish the Company or the Issuer, upon request, a complete list of all clients with who advised of the Notes and such persons' places of residence and such other information reasonably requested by us or the Issuer.

4.    **Compensation.** Neither the Issuer nor the Company shall pay any fees, commissions, or other compensation to the Investment Advisor.

      4.1    All expenses incurred by you in the performance of your obligations hereunder including, without limitation, expenses related to the offering of the Notes and any attorneys' fees shall be at your sole costs and expense, and the foregoing shall apply notwithstanding the fact that the offering is not consummated for any reason.

5.    **Covenants of DBSI Securities Corporation.** The Company covenants with you as follows:

      5.1    The Company will supply without charge such number of copies of the then current Memorandum as you may reasonably request. You are not authorized to make any representation in connection with the sale of the Notes other than those contained in the Memorandum. All correspondence with prospective offerees or purchasers must be submitted to the Issuer and to the Company for approval before use.

      5.2    The Company will, upon request, assist you in familiarizing your sales force with the Issuer and the Notes.

6.    **Indemnification by the Issuer and the Company.** The Company agrees to indemnify, defend and hold harmless the Investment Advisor, its officers, directors, employees and agents, against all losses, claims, demands, liabilities and expenses, including reasonable legal and other expenses incurred in defending such claims or liabilities, which they or any of them may incur, including, but not limited to, alleged violations of the Securities Act, but only to the extent that such losses, claims, demands, liabilities and expenses shall arise out of or be based upon (a) any untrue statement of a material fact contained in Private Placement Memorandum or in any amendment or supplement thereto, or in any application filed with the SEC or any state regulatory agency in order to exempt or qualify the Investment under the securities laws thereof (the "Filings") or (b) any omission or alleged omission to state therein a material fact required to be stated in the Private Placement Memorandum or the Filings, or necessary to make such statements, and any part thereof, not misleading; provided, further, that any such untrue statement, omission or alleged omission is not based on information included in any such document which was supplied to the Company, or any officer of the

Company by such Investment Advisor; provided in each case that such claims or liabilities did not arise from Investment Advisor's own negligence, malpractice or malfeasance. This indemnity provision shall survive the termination of this Agreement.

Promptly after receipt by you or any Affiliated Person of notice of commencement of any action in respect of which indemnity may be sought against the Issuer or the Company under this Section, you will notify the Issuer and the Company in writing and, subject to the provisions hereinafter stated, the Issuer or the Company shall assume the defense of such action (including the employment of counsel and the payment of expenses) insofar as such action shall relate to any alleged liability in respect of which indemnity may be sought against the Issuer or the Company. You or any Affiliated Person shall have the right to employ separate counsel in any such action and to participate in the defense thereof, but the fees and expenses of such counsel shall not be at the expense of the Issuer or the Company unless the employment of such counsel has been specifically authorized by the Issuer or the Company. Neither the Company nor the Issuer shall be liable to indemnify any person for any settlement of any such action effected without our consent or the consent of the Issuer. The indemnity agreement shall be in addition to any liability which the Company and the Issuer may otherwise have.

7. **Indemnification by the Investment Advisor**. The Investment Advisor agrees to indemnify, defend and hold harmless the Company, its affiliates and their or its officers, general partner, directors, trustees, employees and agents, against all losses, claims, demands, liabilities and expenses, joint or several, including reasonable legal and other expenses incurred in defending such claims or liabilities, whether or not resulting in any liability to the Company, its affiliates and their or its officers, general partner, directors, trustees, employees or agents, which they or any of them may incur arising out of: (a) the offer or sale (as such term is defined in the Securities Act) by the Investment Advisor, or any person acting on its behalf, of any Investment pursuant to this Agreement, if such loss, claim, demand, liability, or expense arises out of or is based upon an untrue statement or alleged untrue statement of a material fact, or any omission or alleged omission of a material fact, other than a statement, omission, or alleged omission by the Investment Advisor which is also, as the case may be, contained in or omitted from the Private Placement Memorandum and which statement or omission was not based on information supplied to the Company by such Investment Advisor; (b) the breach by the Investment Advisor, or any person acting on its behalf, of any of the terms and conditions of this Agreement; or (c) the negligence, malpractice or malfeasance of the Investment Advisor. This indemnity provision shall survive the termination of this Agreement.

Promptly after receipt by the Company or the Issuer or any Affiliated Person of notice of commencement of any action in respect of which indemnity may be sought against you under this Section, the Company or the Issuer will notify you in writing and, subject to the provisions hereinafter stated, you shall assume the defense of such action (including the employment of counsel and the payment of expenses) insofar as such action shall relate to any alleged liability in respect of which indemnity may be sought against you. The Company, the Issuer, and any Affiliated Person shall have the right to employ separate counsel in any such action and to participate in the defense thereof, but the fees and expenses of such counsel shall not be at your expense unless the employment of such counsel has been specifically authorized by you. You shall not be liable to indemnify any person for any settlement of any such action effected without your consent. The indemnity agreement shall be in addition to any liability which you may otherwise have.

8. **Contribution**. In order to provide a just and equitable contribution in any case in which any person makes claim for indemnification pursuant to Section 6 or 7, as appropriate, but it is judicially determined (by the entry of a final judgment or decree of a court of competent jurisdiction and the expiration of time to appeal or the denial of the last right of appeal) that such indemnification may not be enforced in such case notwithstanding the fact that the express provisions of such Section provide for indemnification in such case the Company, the Issuer, and you shall contribute to the aggregate losses, claims, damages or liabilities to which the parties hereto may be subject in either such case and in such proportions so that the parties are responsible in the aggregate in proportion to the compensation

Case 1:11-cv-00744-GMS Document 138-6 Filed 07/03/12 Page 6 of 18 PageID #: 1052

Investment Advisors Agreement                                                                Page 5

received by such parties and their affiliates, directly and indirectly, from the gross proceeds of this offering. The foregoing contribution agreement shall in no way effect the contribution liabilities of any persons other than the parties hereto.

9. **Notices**. All communications hereunder shall be in writing and, except as otherwise provided, shall be delivered at, or mailed to, the following addresses: If to you, to the address first set forth; and if to the Company or the Issuer, addressed to it at 1550 South Tech Lane, Meridian, Idaho 83642.

10. **Inurement**. The representations, warranties, and agreements made by the parties herein shall inure to the benefit of the respective parties, the officers, directors, members, partners and control persons of each of them, and their respective successors and assigns, and shall survive the closing of the transactions referenced herein.

11. **Term**. This Agreement shall become effective upon acceptance by you and shall continue in effect until all of the Notes have been sold or the offering is otherwise terminated by the Issuer. This Agreement may be terminated by either party at any time by written notice to that effect.

12. **Construction**. This Agreement shall be construed in accordance with the laws of the State of Idaho. This Agreement constitutes the entire understanding between the parties hereto and supersedes any prior understandings or written or oral agreements between them respecting the subject matter hereof.

13. **Survival of Representations, Warranties and Agreements**. All representations, warranties and agreements of the Company and you contained herein shall survive the delivery, execution and termination of this Agreement.

[Signatures Appear on the Following Page]

      If the foregoing is in accordance with your understanding of this agreement, please sign and return to the Company the enclosed duplicate hereof whereupon it will become a binding agreement between the Parties hereto.

Very truly yours,

**DBSI SECURITIES CORPORATION**

By: _____
      Merriah Harkins, Its President

      DBSI 2008 Notes Corporation hereby agrees to be bound by the terms and provisions contained in this Agreement which are applicable to it including the indemnification provisions of Section 6.

**DBSI HOUSING, INC.**

By: _____
      Douglas L. Swenson, Its President

DBSI Securities Corporation
1550 South Tech Lane
Meridian, Idaho 83642

    Re:    9.5% Notes in
            DBSI 2008 Notes Corporation

Sirs/Madames:

    The undersigned confirms its agreement to comply with the premises and terms and conditions there foregoing Investment Advisors Agreement subject to the terms and conditions of such Agreement. The undersigned confirms that it is an entity organized and presently in good standing in each state in which the investment advisor has clients, is presently registered or licensed as an investment advisor under the Investment Advisers Act of 1940, as amended, and presently is registered or licensed as an investment advisory by the appropriate regulatory agency of each states in which the Investment Advisor has clients, or is exempt from such requirements.

    The Subscriber has engaged the services of the Investment Advisor with whom the subscriber has agreed to pay a fee for investment advisory services: the Investment Advisor has recommended the purchase of the Notes to the subscriber and is effecting the subject transaction in its capacity as investment advisor on behalf of the subscriber; the Investment Advisor will not be receiving any commissions in connection with purchases of shares of the Company made on behalf of the subscriber. The Investment Advisor has delivered a complete copy of the PPM to the subscriber and has taken steps to ensure the subscriber has an understanding of: (a) the fundamental risks of the Notes; (b) the risk that the subscriber may loose the entire investment; (c) the lack of liquidity of the Notes; (d) the restrictions on transferability of the Notes; (e) the background and qualifications of the Company; and (f) the tax consequences of the investment based upon the Investment Advisor's review of financial records and other information regarding the subscriber contained in its files, the Investment Advisor has determined that: (i) the subscriber meets the minimum income and net worth standards set forth in the PPM; (ii) the Subscriber can reasonably benefit from investing in the Notes based on the Subscriber's overall investment objectives and portfolio structure; (iii) the subscriber is able to bear the economic risk of the investment based on the subscriber's overall financial situation; and (iv) the Notes are a suitable and appropriate investment for the subscriber based upon a review of the subscriber's age, investment objectives, investment experience, income, net worth, financial situation, the subscriber's other investments, and the foregoing determinations.

    The Investment Advisor agrees and acknowledges that the Company and the Company are relying on this certification with respect to the suitability of the subscriber who is purchasing the Notes through the Company. The Investment Advisor agrees to maintain the information used and referred to above to determine that an investment in the Notes is a suitable and appropriate investment for the subscriber for a period of at least six years and to make such records available to the Company and the Company during such time period upon their reasonable request.

[Signatures Appear on the Following Page]

Investment Advisors Agreement                                    Page 8

IN WITNESS WHEREOF, the undersigned has certified to the foregoing statements this 13 day of JUNE, 2008.

ADV Registration # 801-62287

_____
Signature of Investment Adviser Representative

Kenneth D. Gross
_____
Print Name of Investment Adviser Representative

# EXHIBIT A

## Distribution Agreement

# DBSI 2008 NOTES CORPORATION
# DISTRIBUTION AGREEMENT

THIS DISTRIBUTION AGREEMENT ("Agreement") dated as of January 25, 2008, is by and between DBSI Securities Corporation, an Idaho corporation ("DBSI Securities"), and DBSI 2008 Notes Corporation, an Idaho limited liability company (the "Company").

## RECITALS

A.   The Company is a wholly-owned subsidiary of DBSI Housing Inc.; and

B.   The Company desires to sell to Accredited Investors certain 9.5% Notes (the "Notes") in the Property; and

C.   DBSI Securities is a securities broker-dealer and a member of the Financial Industry Regulatory Authority (the "FINRA"), which acts as a managing dealer for securities offerings by managing the selling efforts of independent broker-dealers (the "Soliciting Dealers") and registered investment advisors ("RIA's); and

D.   The Company desires to have DBSI Securities manage the sale of the Notes and DBSI Securities is willing to act as the managing dealer for such offering in accordance with the terms and conditions of this Agreement.

## AGREEMENT

NOW THEREFORE, in consideration of the mutual promises herein contained and the respective undertakings hereinafter set forth, the parties hereby agree as follows:

1.   **General.** DBSI Securities is appointed and hereby agrees to sell the Notes which are described more fully in a Confidential Private Placement Memorandum for DBSI 2008 Notes Corporation dated January __, 2008, and any supplement or amendment thereto (the "Memorandum") on a "best efforts" basis through a private offering exempt from registration under the Securities Act of 1933, as amended (the "Securities Act") pursuant to Rule 506 of Regulation D promulgated thereunder and applicable state blue sky exemptions. The date as of which DBSI Securities is notified by the Company that the Notes may be offered and sold shall constitute the "Effective Date" of the offering of the Notes under this Agreement. The "Termination Date" of such offering shall be: (a) June 30, 2008 which may be extended at the sole discretion of the Company but not later than December 31, 2008 or (b) such earlier date on which Subscriptions (as hereinafter defined) for all of the Notes have been sold in accordance with the procedures set forth in the Memorandum. The period from the Effective Date through the Termination Date shall constitute the "Offering Period" for the offering and sale of the Notes by DBSI Securities pursuant to this Agreement. During the Offering Period, DBSI Securities, the Soliciting Dealers and the Company shall designate a date, which date shall not be more than ten business days after the Termination Date, which shall constitute the "Closing Date" under this Agreement.

2.   **Representations and Warranties of the Company.** The Company represents and warrants to DBSI Securities that:

     2.1   The Company is a corporation duly organized and validly existing in good standing under the laws of the State of Idaho, with power and authority to conduct business as described in the Memorandum.

     2.2   Its execution and delivery of this Agreement and compliance with the terms of this Agreement will not conflict with or result in a breach of any of the terms or provisions of, or constitute a

default under, the Operating Agreement of the Company, or any other agreement or instrument to which the Company is a party.

2.3     The Company has taken and will take such action as shall be necessary and proper to cause the offer and sale of the Notes to be exempt from the registration requirements of the Securities Act by virtue of Section 4(2) thereof promulgated thereunder, including the preparation of the Memorandum in form and substance as prescribed therein.

2.4     The Company has taken and will take such action as shall be necessary and proper to cause the offer and sale of the Notes to be exempt from the registration requirements of any state or jurisdiction in which the Notes may from time to time be offered for sale, as mutually agreed upon by DBSI Securities and the Company.

2.5     The Company has prepared and reviewed the Memorandum, and the Memorandum does not include and will not include any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein not misleading; provided, however, that no representations or warranties are made with respect to statements or omissions made in reliance upon and in conformity with written information furnished to the Company with respect to DBSI Securities, by DBSI Securities, or on its behalf, expressly for use in the Memorandum.

3.      **Offering and Sale of the Notes.**

3.1     On the basis of the representations, warranties and agreements herein contained, but subject to the terms and conditions hereinafter set forth, the Company hereby appoints DBSI Securities as the "Dealer Manager" during the Offering Period to offer the Notes in accordance with the terms of the Memorandum. DBSI Securities is authorized to enlist Soliciting Dealers who are members of the FINRA and RIA's that are acceptable to the Company to sell the Notes.

3.2     DBSI Securities, the Soliciting Dealers and RIAs' will only offer the Notes to "Accredited Investors" meeting the requirements of Rule 501 (a) of Regulation D and who reside in the states approved in writing by the Company and in which such Soliciting Dealers and RIA's are dealing.

3.3     All sales of the Notes will be conditioned upon acceptance by the Company of the Subscription Documents of each subscriber, all in the form as may be approved by DBSI Securities, the Soliciting Dealers, RIA's and the Company, or as may be required by the Memorandum. Subscription Documents shall be duly executed by each subscriber and be accompanied by payment in cash of the purchase price of the Notes subscribed to by each subscriber. The Company shall have the right, in its sole and absolute discretion, to reject the Subscription Documents of any potential purchaser of the Notes for any reason or for no reason.

3.4     The Notes will be sold only to persons who warrant and represent that they are "Accredited Investors" and meet the financial and other suitability requirements as set forth in the Memorandum, and such other requirements may be required by the states in which the Notes are sold.

3.5     The Company shall pay DBSI Securities, within ten business days after the Closing Date, as a non-accountable marketing and due diligence allowance, 2.00% of the aggregate cash purchase price received on the sale of the Notes for wholesaling and marketing costs associated with the offering of the Notes. DBSI Securities may, at its sole and absolute discretion, re-allow a portion or all of this allowance to Selling Group members.

3.6     The Company shall pay DBSI Securities, within ten business days after the Closing Date, 7.5% of the aggregate cash purchase price received on the sale of the Notes. DBSI Securities will re-allow up to 7.5% to the Soliciting Dealers as follows: (a) selling commissions in the amount of up to

6.5% for their efforts in soliciting purchasers; (b) 0.5% for due diligence expense reimbursements; and (c) 0.5% for non-accountable marketing expenses, as provided in the Soliciting Dealers Agreement.

3.7   The Company has also authorized DBSI Securities to sell Notes at a discount to the primary offering price if the Investor has engaged the services of an RIA with whom the investor has agreed to pay compensation for the investment advisory services or other financial or investment advice (whether or not such adviser is affiliated with a participating broker-dealer). In the event of the sale of Notes through an RIA or consultant who is compensated on a fee-only basis by the Investor, the Company will reduce the Notes purchase price to reflect that selling commissions will not be paid in connection with such purchases.

**4.   Suitability.**

4.1   DBSI Securities is aware of the suitability standards set forth in the Memorandum that an offeree must meet and represent. As such, DBSI Securities will make reasonable inquiry and cause the Soliciting Dealers and RIA's to make reasonable inquiry to assure that there is compliance with such suitability standards.

4.2   In recommending the purchase of the Notes, DBSI Securities shall cause the Soliciting Dealers and RIA's to: (a) have reasonable grounds to believe, on the basis of information obtained from the offeree concerning his investment objectives, other investments, financial situation and needs, and any other information known by DBSI Securities or any associated person that: (i) the offeree is or will be in a financial position appropriate to enable him to realize, to a significant extent, the benefits described in the Memorandum; (ii) the offeree has a fair market net worth sufficient to sustain the risks inherent in the investment, including loss of investment and lack of liquidity; (iii) the program is otherwise suitable for the offeree; (iv) the offeree is an Accredited Investor (as that term is defined in Regulation D under the Securities Act) and (b) maintain in such Soliciting Dealers', RIA's or DBSI Securities' files documents disclosing the basis upon which the determination of suitability was reached as to each offeree for such period as is prescribed by applicable regulations of the FINRA or state regulatory agency.

4.3   Prior to executing a Subscription Document for the Notes, DBSI Securities shall require the Soliciting Dealer and RIA to inform the offeree of all the pertinent facts relating to the liquidity and marketability of the Notes during the term of the investment.

**5.   Covenants of the Company.**

5.1   The Company shall during the Offering Period and prior to the Closing Date, notify DBSI Securities, RIA's and the Soliciting Dealers immediately, and confirm the notice in writing, of any event relating to or affecting the Notes or the Company which might reasonably result in the Memorandum containing an untrue statement of a material fact or in view of the circumstances under which they were made, omit to state a material fact necessary in order to make the statements therein, in the light of the circumstances existing at the time they were made, not misleading; and if in the reasonable opinion of counsel to DBSI Securities, the content of such disclosure to DBSI Securities requires an amendment or supplement to the Memorandum, the Company will forthwith prepare and furnish to DBSI Securities, the RIA's and the Soliciting Dealers, at the Company's expense, a reasonable number of copies of such amendment or amendments, or supplement or supplements, to the Memorandum so as to render it not misleading prior to the consummation of any sale of Notes.

5.2   The Company shall file such applications for exemption with the Securities and Exchange Commission and applicable regulatory authorities of the states, as and when such filings are required under the securities laws of those states, and promptly furnish to DBSI Securities a copy thereof.

Investment Advisors Agreement                                                                 Page 13

    5.3    The Company shall deliver promptly to DBSI Securities, the RIA's and the Soliciting Dealers, upon request, true and complete copies of such documents and other information relating to the Notes or to the Company, as DBSI Securities or the Soliciting Dealers may reasonably request prior to the Closing Date.

    5.4    The Company shall apply the proceeds of the sale of the Notes substantially as set forth in the Memorandum.

    5.5    The Company shall subject to DBSI Securities' actions and the actions of others in connection with the Offering, comply with all requirements imposed upon it by Regulation D and other applicable federal and state securities laws.

**6.**    <u>**Covenants of DBSI Securities.**</u>

    6.1    DBSI Securities shall complete all steps necessary to permit DBSI Securities to offer the Notes pursuant to exemptions available under applicable federal law and other applicable state laws. DBSI Securities shall conduct all of its solicitation and sales efforts in conformity with Regulation D and Rule 506 and exemptions available under applicable state securities laws.

    6.2    DBSI Securities will comply in all respects with the subscription procedures and plan of distribution set forth in the Memorandum, as the case may be.

    6.3    DBSI Securities shall offer the Notes for sale and sell the Notes solely on the basis of the information furnished to prospective investors in the Memorandum and agrees to deliver no written information other than the Memorandum to any potential subscriber unless authorized to do so in writing by the Company.

    6.4    DBSI Securities will immediately bring to the attention of the Company any circumstance or fact which causes DBSI Securities to believe the Memorandum, any supplements thereto, or any other literature distributed pursuant to the Offering, or any information supplied by prospective purchasers in their Subscription Documents, may be inaccurate or misleading.

    6.5    DBSI Securities shall obtain written evidence sufficient to permit DBSI Securities and the Company to reasonably determine that a subscriber purporting to qualify is, in fact, so qualified;

    6.6    DBSI Securities shall obtain, prior to obtaining a Subscription from any potential subscriber, evidence satisfactory to DBSI Securities and the Company that each subscriber meets the financial suitability requirements established in the Memorandum;

    6.7    DBSI Securities shall not commence the offer or sale of the Notes in any state until DBSI Securities has received advice from the Company or its counsel that the Notes may be offered and sold in such state; and

    6.8    DBSI Securities shall furnish to the Company or its designee at the Company's request during the Offering Period, and in any event within five days after the Termination Date, the Subscription Documents (or true copies thereof) of subscribers solicited to permit the Company or its designee to review such Subscription Documents and to evaluate the qualifications of such subscribers.

    6.9    DBSI Securities shall use its best efforts to cause such Soliciting Dealers and RIA's to comply with all of the foregoing obligations.

    6.10    DBSI Securities shall be solely responsible and liable for any commissions, compensation or other payments due to any Soliciting Dealers.

    6.11    DBSI Securities shall maintain in its files, for a period of six years following the Offering Termination Date, documents disclosing the basis upon which the determination of suitability referred to in Section 4 was reached as to each investor.

**7.    Payment of Expenses.** The Company shall pay all expenses incident to the performance of its obligations under this Agreement, including: (a) the preparation of the Memorandum; (b) the preparation of this Agreement; (c) the fees and disbursements of the Company's counsel, accountants and consultants related to the preparation of the Memorandum; (d) the exemption of the Notes for the offer and sale thereof under the securities laws of the states DBSI Securities, the RIA's or the Soliciting Dealers may reasonably designate, including filing fees and the fees and disbursements of counsel in connection therewith; and (e) the printing and delivery to DBSI Securities of such quantities of the Memorandum as DBSI Securities may reasonably request and all amendments or supplements thereto.

**8.    Representations, Warranties and Agreements to Survive.** Except as the context otherwise requires, all representations, warranties and agreements contained in this Agreement shall remain operative and in full force and effect and shall survive the Closing Date.

**9.    Effective Date, Term and Termination of this Agreement.**

    9.1    This Agreement shall become effective on the Effective Date. Either party may elect to prevent this Agreement from becoming effective without liability of any party to any other party by giving notice of such election to the other parties hereto before the time this Agreement otherwise would become effective.

    9.2    DBSI Securities shall have the right to terminate this Agreement at any time during the Offering Period if any representation or warranty hereunder shall be found to have been incorrect or misleading or the Company shall fail, refuse or be unable to perform any of its agreements hereunder or to fulfill any condition of DBSI Securities' obligations hereunder or if the Memorandum shall not have been amended or supplemented despite DBSI Securities' request for such amendment or supplement will, in DBSI Securities' opinion, make it inadvisable to proceed with the offering and sale of the Notes.

**10.    Notices.** All communications hereunder, except as herein otherwise specifically provided, shall be in writing and shall be mailed, delivered or faxed and confirmed at the address set forth below:

    Company:    DBSI 2008 Notes Corporation
        c/o DBSI Housing Inc.
        1550 South Tech Lane
        Meridian, Idaho 83642
        Fax: (208) 955-9834

    DBSI Securities:    DBSI Securities Corporation
        1550 South Tech Lane
        Meridian, Idaho 83642
        Attn: Merriah Harkins, President
        Fax: (208) 955-9834

**11.    Parties.** This Agreement shall inure solely to the benefit of both parties and shall be binding upon their respective successors and assigns. Nothing expressed or mentioned in this Agreement is intended or shall be construed to give any person or entity, other than the parties hereto and their respective successors and assigns any legal or equitable right, remedy or claim under or in respect of this Agreement or any provision herein contained. No purchaser of any of the Notes from DBSI Securities or the Company shall be construed a successor or assign by reason merely of such purchase.

**12.    Construction.** This Agreement shall be construed in accordance with the laws of the State of Idaho.

[Signatures Appear on Following Page]

Investment Advisors Agreement                                                      Page 16

**ACCEPTED AS OF THE DATE FIRST ABOVE WRITTEN.**

**DBSI 2008 NOTES CORPORATION**

By:  DBSI Housing Inc.

By:  _____
     Douglas L. Swenson
     Its President

**DBSI SECURITIES CORPORATION**

By:  _____
     Merriah Harkins, Its President

16

## Exhibit B

This Exhibit B is attached to and made a part of that certain Selected Investment Advisor Agreement, dated as of the __13__ day of _____JUNE_____, 200__8__, by and between DBSI 2008 Notes Corporation, (the "Company") and (the "Advisor").

1.  Identity of Advisor:

    Name: __Ken Gross Financial, Inc. (dba) Strategic Financial__

    Type of Entity: __Subchapter S Corporation__

    State Organized in: __California__

    Qualified to Do Business and in Good Standing in:
    __CA, TX, all other states as__

    Registered as an Investment Advisor in the Following States:
    __CA, TX, all other states as Req'd__

2.  Name and Address for Notice Purposes:

    Name: __Kenneth D. Gross__

    Title: __Pres.__

    Company: __Strategic Financial__

    Address: __One Boardwalk Ave., Suite 103__

    City, State, Zip: __Thousand Oaks, CA 91360__

    Telephone: (__805__) __494-1825__

    E-Mail: ken.gross@gte.net